## Thomas Walker, President of The Bank of Utica, *vs.* Paine.

The condition of a mortgage was that the mortgagor should pay " the just and full sum of all moneys," which he might owe to the mortgagees, " either as maker or indorser of any note or notes, or any bills of exchange, bonds, checks, overdrafts or securities of any kind, given by him, according to the conditions of any such writings obligatory executed by him to the mortgagees, as a collateral security." *Held* that the instrument called for written evidences of debt, signed or indorsed by the mortgagor, and could be satisfied by no other ; and that it could not be made available as a security for a debt not in writing.

*Held also*, that in the absence of any misrepresentation of facts, upon which the holder of the mortgage or any person through whom he claimed had been induced to act or to withhold action, to his detriment, the mortgagor was not *estopped* from denying the existence of such a written security as would answer the condition of the mortgage.

APPEAL from a judgment entered at a special term, upon the report of a referee. The action was brought to foreclose a mortgage executed by the defendant, Rodney C. Paine, on the 27th day of July, 1841, to the Farmers and Mechanics' Bank of Michigan, to secure the payment of the sum of $2500. The mortgage was recorded in August, 1841, and was assigned to the plaintiff on the 20th of November, 1851. The condition of the mortgage was as follows : That in case the mortgagor should pay "the just and full sum of all moneys which he may owe to the said parties of the second part, either as maker or indorser of any note or notes, or any bills of exchange, bonds, checks, overdrafts or securities of any kind, given or indorsed by the party of the first part, [the defendant,] together with the interest on the same, according to the conditions of any such writings obligatory, executed by the said party of the first part, to the said parties of the second part, as a collateral security, then these presents, and the said writings obligatory, shall cease and be null and void. But in case of the non-payment of the said writings obligatory, of whatever nature, or of any part thereof, according to their respective conditions, or of the interest thereon, or any part thereof, at the times limited for the payment thereof, then and in such

case" the premises may be sold, &c. The complaint alleged, on information and belief, there was due on the mortgage on the 30th day of July, 1842, $2500 and interest, "for and by reason of the failure of the defendant to comply with the conditions of the mortgage, and that said indebtedness accrued to the Farmers and Mechanics' Bank against the defendant as maker or indorser of notes or bills, or by reason of bonds, checks, overdrafts or securities given by or indorsed by said defendant, on or before July 27, 1841, the day the mortgage bears date." That the defendant failed to comply with the conditions of the mortgage, by omission to pay the said $2500 due thereon July 30, 1842. There was no allegation in the complaint that any written evidence of the debt, or any debt save what was evidenced by the mortgage itself, was transferred to the plaintiff, or that the plaintiff owns any other. The answer alleged that no consideration was in fact paid by the bank for said mortgage, at any time. It denies that the defendant is, or was at any time, indebted to the bank in any sum, either as maker or indorser of any note or notes, or of any bills of exchange, bonds, checks, overdrafts or securities of any kind, given by or indorsed by the defendant, according to the conditions of any such writing obligatory executed by the defendant to the bank. It alleged that when the mortgage was executed, the defendant did not owe the bank any sum on any such securities, nor any sum according to the condition of any such securities, and that there is nothing due to the mortgagee or plaintiff on the mortgage. That the Bank of Michigan never assigned or transferred to the plaintiff any securities named in the condition of said mortgage, or any debt or demand the mortgage was security for; and that the defendant had not failed to comply with the conditions of the mortgage.

The action was brought against Paine and wife, and the Farmers' and Mechanics' Bank of Michigan. It was subsequently discontinued, as to all the defendants except Paine. The cause was referred to Timothy Jenkins, as referee, who by his report found the following facts, among others: That

Walker *v.* Paine.

the defendant, Paine, executed to the said Farmers and Mechanics' Bank of Michigan the mortgage referred to in the pleadings, of the date of July 27, 1841, and for the purposes set forth in the condition of the said mortgage, which mortgage was duly acknowledged and recorded at the times indicated by indorsements thereon. That in 1834 the Farmers and Mechanics Bank, being authorized so to do by the legislature of the state of Michigan, established an agency at St. Joseph in said state; and continued to transact business at its said agency to 1844; when said bank, under like authority, established an agency at Niles in said state. That the defendant, Paine, was cashier of said agency at St. Joseph, from 1836 to 1844, and afterwards of the said agency at Niles, from 1844 to some time during the year 1851. He was in the employ of said Farmers and Mechanics' Bank, as such cashier, upon a salary; and during several of these years, in addition to his business as cashier, he laid out large sums of money belonging to the bank, in produce business and otherwise, for the benefit of the Farmers and Mechanics' Bank, and under its authority. That in 1851 the said bank agencies were brought to a close, and Paine surrendered, in the spring of that year, and delivered over to the parent bank at Detroit, the books, evidences of debt and the effects belonging to the bank. Among other things so surrendered he delivered over mortgages to the amount of $10,214.14, and included among these mortgages was the mortgage of the date of 27th July, 1841, above mentioned; and also the mortgage bearing date February 15, 1842, referred to in the pleadings, was also delivered over at the same time by Paine to the parent bank. That on the 30th day of July, 1842, Paine was indebted to the Farmers and Mechanics' Bank in the sum of $2500, which was proved by his entries in the books of the Farmers and Mechanics' Bank, kept at the establishment at St. Joseph, which sum, leaving out of consideration his claim for extra services, has never been paid by him. That this sum of $2500 was indorsed upon the wrapper by Paine, covering the two mortgages, and the same

indorsement was on the wrapper covering the mortgages, when Paine delivered them to the parent bank, and was embraced in the account of the sum of $10,214.14 above mentioned. That the said two mortgages were transferred to the plaintiff on the 20th day of November, 1851, and the plaintiff is now the lawful owner of them and each of them. The referee found, as conclusions of law, 1. That the evidence of the indebtedness of Paine to the Farmers and Mechanics' Bank, was equivalent only to a parol admission by him that he owed the said bank the $2500. 2. That the condition of the mortgage bearing date July 27th, 1841, contemplated and covered no other indebtedness than such as might be evidenced by some written instrument, signed or indorsed by said Paine, and did not contemplate and does not cover, in terms or effect, the said $2500, or any part thereof. 3. That the defendants Rodney C. Paine and Abigail W. his wife were entitled to judgment in their favor against the plaintiff, and for their costs of this action.

The plaintiff appealed from the judgment.

*Ward Hunt* and *M. H. Throop*, for the appellant. Upon the facts clearly proved before the referee, and concerning which there was no conflict of evidence, the plaintiff was entitled to recover, and the report in favor of the defendant was erroneous. I. The proof made out a prima facie case for the plaintiff, and the report for the defendant was therefore erroneous as matter of law. The evidence raised three legal presumptions: Paine's acts and admissions; the indorsement, "bonds and mortgages," upon the wrapper; the judicial notice which courts take of ordinary commercial usages, (10 *Barb.* 406;) raised the presumption that the instruments called for by the mortgage had at one time been executed by Paine. The affirmative proof that all the securities remained in his hands for nine years, and that in 1851 he surrendered nothing except these mortgages, coupled with the same acts and admissions, raised the presumption that he still retained the

Walker *v.* Paine.

other instruments, or had destroyed them ; or, to say the least, the affirmative proof that he did not surrender them to us, cast upon him the onus of accounting for them. And the presumption arising from their suppression, or the failure to produce or account for them, would be that, if produced, they would satisfy the condition of the mortgage. The report was a finding in opposition to these legal presumptions, and was therefore erroneous as matter of law. (1 *Greenl. Ev.* § 33. 1 *Cowen & Hill's Notes*, 308, 309. 6 *Peters*, 622, 632, 633. 14 *Barb.* 284, 303, *and cases cited.*)

II. The defendant was estopped as against the Farmers and Mechanics' Bank, our assignor, from interposing the defense that no such securities existed. The correct definition of an estoppel is contained in 3 *Hill*, 215, 222, and 12 *Barb.* 128. This case contains all the requisites of an estoppel. The admissions made by him are inconsistent with the claim he now sets up. The other party acted upon these admissions ; and the other party will be injured by allowing the truth of the admission to be disproved. These two propositions belong together. Relying upon these admissions, the Farmers and Mechanics' Bank settled Paine's account, both expressly and by acquiescence. (1 *Kern.* 170.) This settlement is conclusive, and can only be opened by the bank on an allegation of fraud or mispresentation by Paine, which certainly he cannot call upon the bank to make. The bank therefore lost its action against Paine, and confined its remedy to these mortgages as representing the debt. Can he be heard now to say that they represent nothing ? Relying on the admissions made to John A. Welles, the cashier before 1845, the bank suffered the statute of limitations to run against the debt. This appears by an irresistible implication. On the faith of the same representations, they transferred the mortgages and guarantied their collection. They will thus be compelled to pay a heavy bill of costs, if the plaintiff fails. And the mere bringing a suit on the faith of the representations, satisfies the rule. (*Presbyterian Church* v. *Williams*, 9 *Wend.* 147.)

Walker *v.* Paine.

III. If the question is still open, we contend that the indebtedness which we proved satisfied the condition of the mortgage. The referee erred in his conclusion that the mortgage (schedule A) called for a written security. The provisions of its condition are so repugnant to each other, that it can hardly be said to have any legal construction ; but a careful analysis of the language used, results in establishing the following propositions : The debts which it is conditioned to pay are such as accrue against Paine as "maker or indorser" of the articles enumerated. He could not be a maker (in a technical sense) of a "bill of exchange," "bond," "check," "overdraft," or "security," (other than a note,) nor could he be the indorser in any sense of a "bond," "overdraft" or "security." Therefore the word "maker" must be used in its popular and not its technical sense. They are to be "given or indorsed by" Paine. It is manifest that "given" is the verb applicable to "maker," as "indorsed" is to "indorser." "According to the condition of any such writings obligatory." A "writing obligatory" is a bond or other sealed instrument, (1 *Parsons on Cont.* 6 ; *Chitty,* 1 ;) so that this phrase makes nonsense of what precedes it, unless the words " when they are writings obligatory " are added. The mortgage then clearly includes in its condition the case where Paine is the "maker of an overdraft." The mortgages were given July 27, 1841, and February 15, 1842. They manifestly embrace past debts and future debts. On or before the 30th July, 1842, Paine had taken out of the bank $2500, which he had not accounted for, as a careful examination of the extracts from the books will show. Was not this an " overdraft ?" An " overdraft," in the banking business, is an excess of debtor over creditor in a customer's or officer's account. Usually it is caused by too many checks being drawn ; but even then the checks are not the " overdraft," but only evidence of it. Sometimes it is caused by charging a note, &c. ; sometimes by oral directions to charge expenses in matters in which a depositor is interested. In each case the account is overdrawn. Has not a bank offi-

Walker v. Paine.

cer overdrawn his account when he takes money from the till, beyond his salary, and charges it to himself? The mortgage (schedule C) stands admitted of record, and proved in fact, to have been given as collateral security for the same debt as schedule A. Limiting as before the provision as to "writings obligatory," and there remains a condition to pay "debts of any and every nature." These two mortgages being a part of the same transaction are to be read together though they bear different dates, and schedule C qualifies and enlarges schedule A as between the parties, the rights of no third person having intervened. (*Coddington* v. *Davis*, 3 *Denio*, 16. 1 *Comst.* 186. 18 *John.* 420. 1 *John. Cases*, 91. 5 *Cowen*, 468. 21 *Wend.* 202. 1 *Paige*, 455. 3 *id.* 254.) Schedule A, therefore, included the debt in question: Because schedule C is to be read as if its condition was incorporated in schedule A. Because it was admitted of record, and proved that such was the intent of the parties. And upon the following general principles: The construction of the instrument is doubtful; and the court will resort to the extrinsic circumstances disclosed by the proofs, and construe the mortgage according to the intent of the parties apparent upon the proofs. (1 *Barb.* 635. 22 *Barb.* 326. 1 *Greenl. Ev.* §§ 277, 282, 286–288, 297. 2 *Cowen & Hill's Notes*, 1361, 1370, 71, 1404–1406.) In aid of the extrinsic facts the whole instrument is to be considered together, (in this case the two instruments,) and, in doubtful cases, the construction most favorable to the covenantee is to be adopted. (3 *John.* 375. 2 *Cowen*, 781. 6 *Barb.* 258. 16 *John.* 172. 8 *id.* 394.) Especially will such a construction prevail where the covenantor was the draughtsman, and at the same time the agent of the covenantee in the transaction. Finally, that construction is to be adopted which, upon the whole case, will enable the instrument to stand, rather than to fall. (3 *Cowen*, 384.) The entries in the books, and the indorsement on the wrapper, satisfied the terms of the mortgage. The referee does not disclose upon what clause of the instrument he bases his conclusion that a written instru-

ment must be produced, nor what must be the character of that instrument; but if a mere writing, creating or evidencing a liability to pay, is necessary, we contend that we showed such a writing. The entries were in Paine's handwriting, and the wrapper was adopted by him. The transaction amounted to this: In 1841 Paine gives a mortgage conditioned to pay any debt thereafter to arise upon a written instrument. In 1842 he acknowledges in writing that he has borrowed, on the security of the mortgage, $2500. In 1851 he repeats that acknowledgment. Has he not satisfied the condition of the mortgage? The entry was, at least, equivalent to an I. O. U., which contains no promise to pay. But an I. O. U. is evidence of money lent. (*Douglas* v. *Holme,* 12 *Ad. & El.* 641. 20 *E. C. L.* 320.)

*Charles H. Doolittle,* for the respondent. I. The condition of the mortgage which this action was brought to foreclose, covers no other indebtedness than such as might be evidenced by some written instrument, signed by or indorsed by the defendant, Paine. This condition is written in a printed blank mortgage; its terms, therefore, are not accidental, but designed and considered. It was competent for Paine, and it is not unusual, to secure a certain kind of indebtedness, and in clear and express terms this condition limits the security to particular kinds of debts. If designed to secure all debts he might owe the bank, why add the qualifying lines? The first two lines of the condition, "all moneys which he may owe to the said parties of the second part," would cover, without addition, all debts, but they are followed by express words of limitation. There was no use of the subsequent part of the condition, except to qualify and limit the first two lines above quoted, and they have no other effect. The words "made or indorsed" are used in their ordinary acceptation, when speaking of a note or bill. They do not refer to the person who filled out the instrument, but in some sense he is the maker. The terms refer to persons who in a partic-

ular manner and way put their names to an instrument. The maker of any note, security or demand, is the person who signs, in contradistinction to a man who puts his name on the back, and indicates the man on the paper primarily liable. It is a common term, used in the manner and way it is in the condition, with a well defined signification. The words "given by, or indorsed by," are equally common, and have a well understood signification when used with reference to money demands. No matter how many hands a note has passed through, or how many may have indorsed or guaranteed it, or who held it; when the terms, "the person who gave the note," "the person by whom the note was given," are used, the person who signed it is intended. All demands by the terms of the condition which the mortgage was given to secure, are such as are signed or indorsed by the mortgagor. The words are, which he may owe, "as maker or indorser of any note," &c. or securities of any kind, "given by or indorsed by said party of the first part." The terms apply to each and every class or kind of indebtedness mentioned in the condition, and qualify and characterize them. Those terms properly apply to *written* instruments only. They apply in the condition only to written instruments which contain an agreement to pay money—instruments on which the defendant, as maker, or indorser, may owe money. The *complaint* does not claim or allege that the mortgage secures any debt, except such as is evidenced by some written instrument made or indorsed by Paine. The plaintiff and his counsel so understood and construed the mortgage at the time when the complaint was drawn.

II. When the terms of an instrument are plain and unambiguous, as the terms of this mortgage are, it must be construed by itself, and the rights of the parties determined by its language. In such case, neither the acts nor the declarations of the parties, not contained in the instrument, can effect its construction. (*Norton* v. *Woodruff*, 2 *Comst.* 155. *Jackson* v. *Sill*, 11 *John.* 212. *Meads* v. *Lansing*,

1 *Hop. Ch.* 124, 134. *Lowber* v. *Le Roy*, 2 *Sand.,* 202, 215.) The condition of this mortgage being plain and unambiguous, it is to be construed by its own language, and not by extrinsic evidence. It is the settled rule in England and in this country, that a regularly executed mortgage cannot be enlarged by tacking subsequent advances to it in consequence of any agreement by parol. (4 *Kent's Com.* 185, *8th ed.* 19 *Ves.* 477. *Walker* v. *Snediker*, 1 *Hoff. Ch. R.* 146. 1 *Merivale's R.* 7. 2 *Kent's Com.* 731, 732.)

III. The extrinsic evidence, then, insisted on in this case to qualify or vary the terms of the mortgage so as to make it security for demands not included in or covered by its terms, effects nothing, and leaves the case as it stood without it, to be determined by the language of the mortgage itself.

IV. The mortgage in suit was not given or received by the Farmers and Mechanics' Bank in fact to secure any demands, except such as are named and stated in its condition. (1.) It is so alleged in the complaint. (2.) It is so found as a fact by the referee on the evidence, and that finding is not excepted to. (3.) If any debt has then been found owing by Paine to the bank, not evidenced by a writing, signed or indorsed by Paine, it is not to be considered in this action.

V. If the plaintiff recover in this case, he must recover on the case made by his complaint. If he alleges a certain breach of the condition of the mortgage by which he claimed a right of action, and claims to foreclose for that reason, he must prove it, or fail in his action. (*Brazill* v. *Isham*, 2 *Kern.* 9, 17. *Oakley* v. *Morton*, 1 *id.* 25, 33. 2 *Seld.* 179. *Bristol* v. *Rensselaer R. R. Co.*, 9 *Barb.* 158. *Parker* v. *Rensselaer and Saratoga R. R. Co.*, 16 *id.* 316. *Coan* v. *Osgood*, 15 *id.* 583.)

VI. The cause of action stated in the complaint was not proved, and it cannot fairly be pretended the plaintiff was entitled to any judgment on the case made by his complaint. (1.) This action was brought to foreclose the mortgage dated July 27, 1841, on the ground there had been a certain alleged

breach of its condition—not of any contract outside of the terms of the mortgage, but of its condition. The breach of the condition of the mortgage alleged in the complaint, by reason of which alone it is therein claimed the plaintiff has a right to foreclose, is stated in the complaint as follows, to wit: "On the 30th day of July, A. D. 1842, there was due to the said corporation on said two mortgages, and by reason of the failure of the defendant, R. C. Paine, to comply with the conditions thereof, the sum of $2500, and that the said Paine was personally liable therefor; the same having accrued to the said corporation against the said Paine as maker or indorser of notes or bills, or by reason of bonds, checks, overdrafts or securities given by or indorsed by the said R. C. Paine, on or before the 27th day of July, A. D. 1841. The defendant, R. C. Paine, has failed to comply with the conditions of the said mortgage by omitting to pay the sum of $2500 due thereon on the 30th day of July, 1842." It will be observed no omission to pay any debt not mentioned in the condition of the mortgage is alleged, and that the allegation is an omission to pay $2500 which accrued or became due to the bank on certain instruments signed or indorsed by the defendant, and held by the bank July 27, 1841. No such breaches are proved or found by the referee, and there is no exception to the referee's finding or omission to find on that point. There is no evidence any where that the bank had any such securities of the defendants, July 27, 1841. There is no evidence that Paine owed the bank any sum July 27, 1841, or before that time. There is no evidence that the Farmers and Mechanics' Bank held or owned any such securities signed or indorsed by Paine when it assigned the mortgage; or that either bank has held any since; or that any sum is due by the terms of any such instrument. In fact it is nowhere proved that there is any debt owing to either bank by Paine, on which there is any thing due, or for which there is a present right of action. The referee finds that Paine owed the Farmers and Mechancis' Bank $2500, July 30, 1842, which he finds is proved by the entries in bank

books copied into the case, not covered by the mortgage. But on what terms was that debt contracted? When was it due? The evidence of that debt was, and the referee so reports, the entry in the books of the bank, signifying that the bank, July 27, 1842, loaned on a bond and mortgage of Paine, to some person, $2500. When and on what terms that $2500 was payable, will depend on the terms of that bond and mortgage. The Farmers and Mechanics' Bank assigned to the plaintiff a bond of Paine's. Perhaps that would show, when given in evidence. But the fact that the bank made a loan on a bond and mortgage made by Paine, by no means shows a present right of action. Nor can the debt created by the loan be proved otherwise than by the bond and mortgage. The debt is all merged in them.

VII. It was claimed on the trial that the entries in the books of the bank in evidence constituted a security, a written obligation within the condition of the mortgage. That claim is untenable. There is no charge in the bank books, to Paine. The bank kept what is called a bond and mortgage account; that is, an account with its bonds and mortgages, in which charges and credits were made to bonds and mortgages. When the bank purchased a bond and mortgage, that account was charged with the amount which was paid for it, signifying that the bank had invested so much in the bond and mortgage, and the cash account was credited that amount, showing that that amount had been invested out of the money on hand. The bank has a bills receivable account; when it discounts a note, it charges the amount paid to bills receivable, and credits the amount to cash out of which the discount is paid. In neither case is it a charge to or an account against any one. In the one case the note is the only debt, security or demand the bank has for its money, and in the other, the bond and mortgage. The entry in the book is the bank's minute of its transactions for its own convenience, showing what it has paid out and what it has received. These entries, then, are not even an account against Paine; but if it was a party's own account

Walker *v.* Paine.

against another, it is not such a security or obligation as is named in the condition of the mortgage. If any such entry could be tortured into a writing obligatory, this is neither signed by or indorsed by Paine, and for that reason would not come within the condition of the mortgage; nor does it contain any terms or conditions, &c. The non-payment of it, then, is no breach of the condition of the mortgage. A security, in the sense used in the condition, is an instrument by which one party secures by his own agreement the payment of money. A writing obligatory is technically a sealed instrument; it means, in this condition, a written instrument containing a promise to pay money. The entries in the books are not in any respect evidence that Paine owes the bank any sum, but they indicate that the bank loaned some person not named $2500 on a bond and mortgage made by Paine.

VIII. It was claimed on the trial that an overdraft was proved. That claim is untenable. When a man draws a draft on another for more money than the other owes him, it is an overdraft. No such thing is proved or attempted to be proved here. Certainly an overdraft is something besides getting a note or bond and mortgage discounted.

IX. The plaintiff has not excepted to the finding of the referee on questions of fact, but to his conclusions of law. Those conclusions of law excepted to are warranted by the facts found, and are right. *The evidence* that Paine owed the bank $2500 is equivalent only to a parol admission by him that he owed the bank $2500. That evidence was the entries on the bank books and the indorsement on the wrapper; neither of which were signed by Paine, or expressed any promise to pay. Certainly that is no more than an admission by Paine that he owed the $2500. It is not that. *The condition* of the mortgage of July 27, 1841, covered no other indebtedness than such as might be evidenced by some written instrument, signed or indorsed by Paine. That conclusion was right, for the reason stated in our first point, that the condition of the mortgage did not cover the said sum of $2500.

This conclusion follows of course from the first two con-clusions found by the referee above stated. It was not pre-tended on the trial that it was due or owing upon any instrument signed or indorsed by the defendant, of which any evidence had been given. The exception that the referee did not find as a fact proved by the evidence that it was the in-tention of the parties the $2500 should be secured by the mortgage, is not tenable, as there was no such issue, and he was not called upon to find one way or the other on that point. The mortgage is alleged in the complaint to have been exe-cuted and delivered to the bank, July 27, 1841. The $2500 debt, if contracted at all, was contracted July 30, 1842, a year after the mortgage was executed. The entry in the bank books of that date, where he is charged with $2500, shows that there was no such debt existing prior to that, in such se-curities; but the demand is on a debt then created, if any.

X. The plaintiff was not entitled to recover on the evi-dence, even if securities covered by the condition of the mort-gage had been given for the $2500. (1.) They were not transferred to the plaintiff. The mortgage is an incident and passes with the debt it is given to secure. (9 *Wend.* 80 *and* 84. 5 *Cowen*, 202 *and* 6.) It is nothing without the debt. It could be enforced only to pay the debt. It is alleged by the plaintiff that the Farmers and Mechanics' Bank had no such securities when the assignment was made; if there were any, they may be owned by persons who can collect them. (2.) They were outlawed. The mortgage contains no personal covenant to pay them, and does not take them out of the stat-ute of limitation. (3.) They were not proved. Their loss was not proved, nor their contents shown, &c.

*By the Court*, PRATT, J. It seems to be conceded by the counsel for the appellant that the mortgage cannot be made to cover debts or advances that do not come within the condi-tions of it; that if it appears, by the condition of the mort-gage, that it was made to secure the payment of debts accruing

Walker *v.* Paine.

upon written contracts or demands, it is not competent to prove by parol that it was in fact made to secure debts and demands resting only in verbal contracts.

The first question, therefore, to be determined is, whether the condition of the mortgage of July 27th, 1841, provides that it shall be a security for debts accruing upon some written contract or agreement signed or indorsed by Paine, or it is general, including also debts accruing upon a verbal contract.

It seems to me that the terms of the condition are too plain to allow of the application of any rules of construction. It seems to read as plain as language can be written. It is, "that if the said Paine shall pay the just and full sum of all moneys which he may owe to the said parties of the second part, either as maker or indorser of any note or notes, or any bills of exchange, bonds, checks, overdrafts or securities of any kind, given by or indorsed by the party of the first part, according to the conditions of any such writings obligatory executed by him, &c. But in case of the non-payment of such writings obligatory of whatever nature, according to the respective conditions thereof," &c., concluding in the usual form. If this does not call for written instruments, I confess I do not know what language could be employed that would call for such and *such* only. Besides, it was not the case of a printed blank which required erasures and interlineations to express the true meaning, and which, in the hurry of preparing it, might have been left to read differently from what it was really designed to express ; but the condition was mostly written, and that too by the mortgagor himself. Taking the instrument as it reads, I think it calls for written evidences of debt, and can be satisfied with no other.

In the second place, Did the proof show any such debt ? The question is not whether the circumstances were such that the existence of some such debt as is called for by the terms of the condition might be inferred, but whether there was such a preponderance of testimony establishing such debt as would authorize this court to set aside the report of the referee.

Upon this point, after a careful examination of the testimony, I am unable to find any proof of such indebtedness. It is true we may conjecture that at some time there may have been a check, upon which the money had been drawn from the bank; or there may have been a bond, but there is no legal proof of it. The books, which seem to furnish the most reliable testimony upon the subject, indicate that the money was advanced directly upon the mortgage, without any personal security. Both mortgages were made long before any money was advanced; hence no personal security could have been given at the time of their execution. The entries in the books show that the $2500 was advanced on the 30th day of July, 1842, some twelve months after the first, and some six after the second mortgage was executed. It is true the entry is made under the head of bonds and mortgages, but as part of the business of the bank was to discount bonds and mortgages, it would, most likely, be entered under that head if no bond had accompanied the mortgage. Indeed the complaint does not aver that any bond was in fact executed; nor was it so contended by the counsel for the plaintiff upon the argument. It was insisted that the court might infer that some written security had been given to satisfy the calls of the condition in the mortgage, but it was not insisted upon that such security was in fact a bond. It was much more strenuously maintained that there was an overdraft, within the terms of the condition. But the inferences to be drawn from the evidence, I think, are strong that the money was advanced directly upon the mortgage, upon a discount of them to that amount. I cannot see how, by any correct use of the term, either commercially or legally, it can be called an overdraft. The report of the referee therefore is clearly sustained by the evidence.

But it is insisted that the defendant, under the circumstances, should be estopped from claiming that the debt is not secured by the mortgage. It is not very obvious to me upon what ground, or upon what portion of the evidence, this

Walker *v.* Paine.

assumed estoppel can be placed. If the parent bank knew nothing of the absence of the requisite written security to answer the conditions of the mortgage, until 1851, it was equally ignorant of the existence of the mortgage itself, or of the debt which it was designed to secure. The knowledge of all came to the bank at the same time, and the transfer to the plaintiff was made with a full knowledge of all the facts. There was no misrepresentation of the facts by Paine, or any course of conduct on his part which induced any action on the part of the bank which it would not otherwise have taken.

The counsel for the plaintiff does not contend that this is a case where a court of equity should enforce the mortgage as a lien for the security of a debt created upon the faith of it as such security, although not literally within its conditions, and therefore I assume that the point, if taken, would be untenable.

But he insists that the defendant should be estopped from denying that there was such written security as would answer the condition of the mortgage. This position cannot be sustained. No misrepresentation of facts has been proved, upon which the plaintiff or any person through whom he claims has been induced to act or to withhold action, to his detriment. It is true the bank relied upon the mortgage as a valid security for the $2500, not upon the assumption that there was a bond or other personal security in writing, but upon a mistaken idea of the law, in assuming that the mortgage might be made available as security for a debt not in writing as the condition thereof requires.

Judgment affirmed.

[Oswego General Term, July 7, 1857. *Hubbard, Pratt, Bacon* and *W. F. Allen*, Justices.]