McKINSTER *vs.* BABCOCK and others, administrators, &c.

Where a chattel mortgage recites a present absolute indebtedness on the part of the mortgagor, and is conditioned for the payment of that, at a particular time, and nothing else, parol evidence is not admissible to show that the object and purpose of the mortgage was to secure the mortgagee for his contingent liability as indorser of the mortgagor's notes, thereafter to be made.

APPEAL from a judgment entered upon the report of a referee. The action was brought against Alexander Babcock to recover damages against him for forcibly and wrongfully taking from the possession of the plaintiff, and carrying away, certain personal property. The plaintiff claimed the property by virtue of a chattel mortgage executed by one Thomas Youngs on the 6th of February, 1856, to the plaintiff, reciting a present indebtedness of $1000, as for money advanced by the plaintiff to Youngs. The mortgage was conditioned for the payment of the $1000 in six months from the date thereof, and contained a promise on the part of the mortgagor to pay it. It also authorized a sale of the property, in case of the non-payment of the debt at the time specified. The defendant justified the taking of the property as sheriff of the county of Monroe, under and by virtue of executions issued to him against the property of Youngs. Upon the trial, the plaintiff rested his case upon the statements contained in the mortgage, as to indebtedness. The defendant gave evidence tending to prove that there was no indebtedness from Youngs to the plaintiff; whereupon the plaintiff testified that he indorsed Youngs' note of $1000 at four or six months, to assist him in raising money; that the $1000 note was not used, but was subsequently given up, and two other notes, made by Youngs, for $500 each, dated February 18, 1856, were indorsed by the plaintiff, in its stead, and afterwards, at maturity, paid by him. The plaintiff was then asked by his counsel the following question: "Did you indorse the two $500 notes, relying on the security of this chattel mortgage?" The de-

fendant objected to this question, on the ground that it was incompetent and leading. The objection was overruled. The defendant requested the referee to find that the plaintiff's demand, on the notes, was not embraced in the mortgage. He declined so to find, and the defendant excepted. The referee found as facts the execution and filing of the chattel mortgage; that Youngs was a flour dealer in the city of Rochester, and that the plaintiff had his office in the same building with Youngs' store, in the second story thereof; that the articles embraced in the mortgage were used by Youngs in carrying on his business, before and after the execution of the mortgage, and were necessary for that purpose; that on or about the 21st of June, 1856, the plaintiff, deeming the property to be unsafe in consequence of judgments being about to be obtained against Youngs, seized the property by virtue of the mortgage, removing a part to his office, and leaving some that could not readily be removed, in the store of Youngs; that at the time the mortgage was executed, Youngs was indebted to the plaintiff in the sum of $600 or $700 which the latter had paid upon drafts accepted for the accommodation of Youngs; that Youngs then made a note for $1000, payable to the order of the plaintiff, which was indorsed by the latter, and delivered to Youngs, to enable him to raise money for his own benefit, and with the proceeds thereof to pay the debt for the money so advanced by the plaintiff for his benefit; that Youngs being unable to negotiate that note, on the 18th of February, 1856, he made two other notes, for $500 each, dated on that day, and payable to the order of the plaintiff, in lieu of the $1000 note, which was destroyed. One of said notes was payable in three and the other in four months from date, with interest, and both were indorsed by the plaintiff and delivered to Youngs, who negotiated the same, and with the proceeds, or a part thereof, paid the plaintiff the money so advanced by him as first above mentioned; that it was the purpose of the parties, by said mortgage, to secure the plain-

McKinster *v.* Babcock.

tiff for the indorsement of the $1000 note, and of any other that might be substituted for it; that both of said notes were subsequently, and after they matured, paid by the plaintiff; that the mortgage was executed in good faith and for a valuable consideration, without any intent to defraud the creditors of the mortgagor; that the judgments mentioned in .the defendant's answer were obtained, and executions thereon issued to the defendant as sheriff, who, by virtue thereof, seized the property in question, and sold the same at public auction; that the sheriff, at the time of the levy, was informed of the claim of the plaintiff, under his mortgage; and that the value of the property was $291. He also found that the debts for which the judgments were recovered were contracted before the chattel mortgage was executed.

The referee found, as a conclusion of law, that the plaintiff was entitled to recover that amount, in this action, with interest.

The original defendant, Alexander Babcock, having died since the trial, the action was ordered to be continued against his administrators, the present·defendants; who appealed from the judgment entered upon the report of the referee.

*Geo. F. Danforth,* for the appellant.

*J. L. Angle,* for the respondent.

*By the Court,* WELLES, J. The principal question involved in this case is, whether it was competent for the plaintiff to show that the object and purpose of the chattel mortgage was to secure him for his indorsements of the notes of Youngs, as stated in the report of the referee. The mortgage expressed no such purpose, and no one would conjecture, from its language, that such was its object or design. By the plain import of its terms, it was given to secure the payment of an existing absolute indebtedness of $1000, due

at the time, from Youngs to the plaintiff. The evidence shows, and the referee finds, that at the time of the execution of the mortgage, Youngs owed the plaintiff six or seven hundred dollars, which the latter had paid upon drafts accepted for the accommodation of Youngs, but which indebtness was paid by him a few days after the execution of the mortgage, and before the mortgaged property was taken by the plaintiff, under the mortgage.

The objection urged on the part of the defendant is, that the evidence of the purpose to secure the plaintiff for such indorsements was changing the legal effect of the mortgage from what it plainly imported on its face, which was to pay an existing absolute indebtedness to the plaintiff, and turning it into a security against the plaintiff's contingent liability as an indorser, and contradicting the express terms of the instrument, which recited a present absolute indebtedness, and purported to secure its payment at a particular time and nothing else.

I have come to the conclusion, with some hesitation, that this cannot be done. If the condition of the mortgage had been to pay the indorsed notes, or any others to be indorsed by the plaintiff for the accommodation of Youngs, it would hardly be contended that it was competent to prove a parol agreement between the parties to the mortgage, at the time it was made, that it was intended to secure a present absolute indebtedness of Youngs to the plaintiff. (*Walker* v. *Paine*, 31 *Barb*. 213–227.) And if that could not be done, it is difficult to see upon what principle the mortgagee should be permitted to show, when the condition was for the payment of a specified sum of money absolutely at a particular time, and for nothing else, that the intention of the parties was to secure him for contingent liabilities on indorsements thereafter to be made.

The counsel for the respective parties have referred us to quite a number of adjudged cases, which are claimed to bear upon this question. I have examined them all carefully, and fail to find that harmony among them which is desirable.

McKinster *v.* Babcock.

Some of them, and I think the largest number, relate to mortgages of real estate and judgments, given for the purpose of security for future indorsements and accommodation liabilities of the mortgagees and plaintiffs.   Some of them have no application to the question, and there are scarcely any of them that may not be easily distinguished in principle from the case before us.   I shall not spend time to consider them particularly, here.   I think it may be truly said that the question is not a settled one, upon authority.   Chattel mortgages belong to a class of securities which the law regards with suspicion, on account of the facility they afford for the perpetration of frauds ; and the legislature has established guards about them, and stringent rules which the common law failed to provide, with a view to prevent resort being had to them for dishonest and fraudulent purposes.   The statute requires them to be filed and registered, in order to be effectual against creditors and purchasers ; declares that they shall be presumed fraudulent and void, against creditors and purchasers, unless accompanied by an immediate delivery and be followed by an actual and continued change of possession, &c. ; and the omission in respect to the delivery to and continuance of the possession by the mortgagee is declared to be conclusive evidence of fraud, unless it is made to appear on the part of the person claiming under the mortgage that the same was made in good faith, and without any intent to defraud, &c.

In this case there was not an immediate delivery of the property to the plaintiff, and hence it was incumbent upon him to make it appear that the mortgage was made in good faith and without an intent to defraud.   In doing so, he of course was under the necessity of showing what the mortgage was given for, or, in other words, what was the consideration for giving it.   The evidence he gave showed an entirely different consideration from that which the mortgage itself declared to be the true one, and that what the parties had made it to say, was a falsehood.   Creditors and subsequent

purchasers are, by the spirit of the statutes referred to, entitled to have the truth made public, in cases where possession of the goods is not immediately delivered, by the filing of the mortgage in the offices designated by the statute. They would be deceived by the filing of a mortgage purporting to secure an absolute specified indebtedness payable at a particular time, if the mortgagee is to be permitted to show that the mortgage had spoken falsely, and that a secret agreement had been made between him and the mortgagor, at the time it was given, as to its purpose and object, to which no allusion whatever had been made in the instrument. It is fair to presume that the defendant prepared his defense upon the supposition that the mortgage which he had found on file expressed the object and purpose of its being, truly; and he was liable to be taken by surprise by evidence showing a purpose and object entirely different. To sanction such a practice would open the door to fraud and deception, and in my opinion it should not be allowed.

I think the judgment should be reversed, and a new trial ordered, with costs to abide the event.

Ordered accordingly.

[MONROE GENERAL TERM, September 1, 1862. *Johnson, J. C. Smith* and *Welles,* Justices.]